Mr. Justice Thacher
delivered the following dissenting opinion:
This is a writ of error to the circuit court of Scott county, sued out by the Commercial Bank of Natchez. Pending the writ of error, in this court, a judgment of forfeiture, under the act of 1843, has been pronounced against the said bank. This is now a motion by William Robertson, who was appointed the trustee of the said bank, upon the rendition of the judgment of forfeiture, for a revival of the suit, in his name, as trustee, and that he may be made party to the suit instead of the late bank.
The first question which arises, under this motion, is, can the trustee sue and be sued % This point arose in the case of Nevitt v. The Bank of Port Gibson, 6 S. & M. 513. In that case, I held that the rights and credits of the bank did not survive the judgment of forfeiture, authorized by the act of 1843, because, by that act, judgment of absolute and entire forfeiture was exacted, the effect of which was the total extinguishment of the franchises of the offending corporation, and as the franchises of the corporation were not, by the statute, continued, either in the original corporators, or in other persons, for any purpose whatever, the choses in action, which only existed by virtue of those franchises, became likewise totally and absolutely extinguished, and being so extinguished, were not the subject of an action at law. Subsequent reflection has only served to fasten this conviction more strongly on my mind.
The right of a banking corporation to enforce the collection of its choses in action, by actions at law, is one of its most important and vital franchises, because the business of a bank is to acquire profits, by loaning its capital stock. By the charters of the banks, in this state, they are authorized to loan three times the amount of the capital stock paid in. In lieu of the capital stock, then, and as a security for the repayment of the same, they acquire nothing but choses in action. A chose in action, in the eye of the law, is not property, but merely gives a right *63 to recover property, by such legal remedies, as the general laws of the land provide, through the instrumentality of courts. If, therefore, the securities taken.for the repayment of such loans; together with the accumulated interest thereon, could not be sued upon, and the payment thereby enforced at law, the consequence would be, that when the bank had loaned out its capital stock, it would cease to exist for want of a power to recover the fund, which alone constitutes the bank. Like the silk-worm, it would have laid its egg, and died. All the authorities agree that when the franchises of a corporation cease to exist for a single instant of time, the rights dependent upon, or flowing out of those franchises, cease also to exist, and can never again be revived, except by the consent of all parties, to be charged or benefited thereby. The majority of the court, in their opinion just read, speaking of the common law rule, say, that “ it may now be regarded as the settled doctrine, that on the dissolution of a corporation, the debts due to and from it, are extinguished, not by any implied condition in the contract, but from necessity, because there is no person in whose favor, or against whom it can be enforced.” In the case of Nevitt v. The Bank of Port Gibson, 6 S. & M. 566, the majority of the court also said, we “deny that the legislature has any power to force a continued existence upon a corporation, after taking away its material franchises, under a judgment, striking down its capacity of succession, and of electing its own officers. And we deny the power of continuing the corporate existence in the hands of others, without the consent of the corporation, unless power to do so be reserved in the charter, or unless there be a general law, authorizing it to be done before the creation of such corporation.” In the present case, the charter of the Commercial Bank contains no such reservation of power, nor was there any general law to that effect, before its creation. The majority of the court do not deny that the Commercial Bank of Natchez is a dissolved corporation. They do not claim that any of the franchises of the bank are continued in the trustee, nor that the power of the trustee to sue is derived from the charter of the bank ; but, on the contrary, they deny that the legislature had *64 the power to continue any of the corporate franchises in the trustee. Hence it is clear that the majority of the court rely alone on the statute of 1843, for the power of the trustee to sue.
The statute of 1843 was never accepted by the bank, nor is it pretended by any one that it constitutes a part of the charter of the bank. It is, therefore, a general law, passed subsequently to, and entirely disconnected from the special act incorporating the bank. It emanates exclusively from the legislative will, and is dependent upon the constitutional exercise of that will, for its force and' validity.
Having shown by the decisions of the majority of the court, that all the franchises of the bank, including the vital franchise of suing, are totally extinguished, and that the powers of the trustees are solely derived from the act of 1843, it follows as an inevitable conclusion, that there must have been a point of time when the franchises of the bank under its charter ceased to exist, and another point of time, subsequent thereto, when the supposed rights of the trustees, under the statute, accrued. Until the dissolution by judgment of forfeiture takes place, the clause of the statute appointing trustees is inoperative. The question of forfeiture is tried by a jury; the jury find a verdict of guilty against the bank. On the finding of this verdict, the court enters up judgment of forfeiture. Here, according to the opinions^ the majority of the court, all the franchises of the bank cease. At this stage of the proceeding, the statute requires the court to appoint one or more trustees, which trustees are required to give bond before they can enter upon the discharge of their duties. All this proceeding requires time. The judge must exercise his discretion in the selection of a trustee. After the court has made its selection of a trustee, the person selected has the option to accept or refuse the appointment. Hence it is clear that the appointment of a trustee, could be no part of the final judgment of the court, because a final judgment is always binding upon the parties thereto. If the person selected refuse the appointment, it would be the duty of the court to select another, and so on, until an acceptance of the trust was obtained. The person accepting *65 the trust, is then required to find sureties to be approved by the court, who, with the trustee, are to enter into bond, conditioned as the court may direct for the faithful performance of the trust, and until such bond is executed, the trustee has no right accruing under the statute. The time then which intervenes between the dissolution of the corporation by the judgment of forfeiture and the qualification of the trustee, thereafter to be appointed by the court may be an hour, a day, or a year, or more. Certain it is, that a point of time intervenes when there is no person in existence who has a right of action in the choses in action, which were of the dissolved corporation. It matters not how short this period of time may be, but if such an interregnum-in the right of action once exist, it can never be reclaimed by legislative power.alone. See dissenting opinions. Nevitt v. The Bank of Port Gibson, 6 S. & M. 531, 575.
It being thus clearly established, as well from the opinions of the majority of the court as from other authorities, that by the judgment of forfeiture under the statute of 1843, the right of the bank to sue, together with all its other franchises, was entirely cloven down and utterly extinguished, and that those rights are not continued through the charter to the trustee. The question now arises, — does that clause o'f the statute which provides that upon the judgment of forfeiture, “the debtors should not be released by such judgment from their debts and liabilities to the bank, but that it shall be the duty of the court rendering such judgment to appoint one or more trustees to take charge of the books and assets of the same, and to sue for, and collect all debts due such.bank,” confer the right upon the trustees to sue in the lieu and stead of the dissolved bank on its choses in action? Let it be borne in mind, that choses in action are mere rights to a remedy at law for the recovery of property; and are based upon a contract between the parties thereto for property. The bank was the sole owner of those choses in action; and at common law, the bank alone had a right to transfer the same, but by a statute of this state, that common law right was taken away. Alluding to this subject, the majority of the court in their opinion in this case say, — *66 “There is no such thing as a legislative appropriation of property-in this country. If it can be shown that the state had no interest whatever in the choses in action, and the real estate, then it will follow that none other than a general legislative power existed over them. The state could have acquired no right on the'ground of forfeiture. The constitution declares that no conviction for an offence shall work a forfeiture of estate. The legislature cannot in the face of this provision, pass a law of forfeiture for offences, nor can it pass an act to transfer property. It is the province of the judiciary to declare the ownership of property in virtue of some preexisting rule or law; and no judicial determination had been pronounced, giving title to the state. No right whatever can be claimed under the common law to the choses in action, or the real estate. Suppose that law to have been in full force, what is the consequence ? By that the real estate would have reverted to the grantor, not to the state; nor could she control it more than other property, for the moment the forfeiture was declared the title would have passed by operation of law to the grantor. The personal property, the state would have been entitled to, and could have disposed of, but she could have acquired no right to the choses in action; they would have been extinguished. Then if there be any such right as that claimed, it must result from the act of 1843. The most obvious answer to this is found in the want of intention in the legislature to vest the property in the state, even if it had possessed the power to do so. There is nothing in the act which professes, either directly or indirectly, to confer any right of property on the state, either absolutely or conditionally. The state did not, nor could she, acquire any right of property by the common law, and she evidently acquired none by the statute ; it transfers no right, which it should have done if any was intended to be secured by it; because as the state had no right independently of the statute, some act of transfer was necessary, as without it nothing could be acquired. Then how, it may be asked, does the particular clause under consideration amount to a reservation of power, when nothing was possessed to reserve. *67 How does it amount to a conditional gift, when the state had nothing to give.” This reasoning demonstrates beyond a doubt that the state had neither a right of action upon, nor a right of property in the choses in action that were of the dissolved bank, and having no such right, it was not in her power to convey or transfer by legislative enactment such a right to a trustee, subsequently to be appointed by the circuit court. This very ground was taken by me in my dissenting opinions, in the case of Nevitt v. The Bank of Port Gibson, 6 S. & M. 546; Ibid. 590.
Thus far, having shown that the trustees do not derive a right of action through the charter of the bank, and that the act of 1843, in attempting to confer such right, was unconstitutional and void, according to the opinions of the majority of the court, the question still remains to be answered, — whence do the trustees derive the right to sue ! The reply is, that this right results “ from operation of law.” We have already seen that the law of the charter has no such operation, and that by the staute of 1840, all banks were forbidden to transfer their choses in action, which statute has been held valid by adjudication of this court. Planters Bank v. Sharp, 4 S. & M. 17. The majority of the court have decided that the state had no right of property in the choses in action, and no right of action in the same, and having no such rights, the legislature could confer none. It follows then, that the statute of 1843, so far as it attempts to confer a title to property, or right of action to recover the same, must be void for want of power in the legislature to pass such an act. If then the legislature have no power to make such a law, and if such a law be void, how can such a law so operate as to produce an effect which the law itself cannot produce. Can the law have an operation and produce an effect, which the law-making power had no authority to accomplish?
It must be remembered, that a cause of action arises out of a contract between the parties, and that a right to sue on such contract, arises from the legislative will. For instance, the legislature passes a general law, authorizing all persons, owning *68 promissory notes, to bring an action at law upon the same. Under this law, any person owning a promissory note, would have a right to sue at law upon the same, but persons, not owning promissory notes, would acquire no rights under the law. Thus, also, the'constitution guarantees that the courts shall always' be open ; but they are kept open only for persons who seek to vindicate an actual injury done to them in their lands, goods, persons or reputations. The constitution does not open the courts to those persons who have no cause of action. Suppose, a plaintiff file a declaration against a defendant in the circuit court. The defendant demurs on the ground, that the plaintiff’s declaration sets forth no cause of action. On the trial of the demurrer, the court decides that the plaintiff’s declaration contains no cause of action. The judgment of the court, then is, that the plaintiff’s action be dismissed. He is then turned out of the court, yet the constitution provides that the courts shall always be open. So, with the statute of 1843. The legislature says, that the ■ trustees appointed under that act, shall have power to sue for, and collect all debts due the bank. If there were no debts due the bank, none could be collected ; and if the trustees had no legal title in debts formerly belonging to the bank, it would confer no rights, because the right to sue can only exist where there is a legal, preexisting cause of action; and when the legislature says that the trustees may sue, it does not thereby invest the trustees with any title to property nor does it create any cause of action in favor of said trustees, but the trustees are confined, in exercising their right to sue, to such causes of action as had a legal existence independent of the statute of 1833. But, I have already shown that, independent of the statute of 1843, no cause of action exists after the judgment of forfeiture. The statute, therefore, of 1843, in giving the trustees power to sue for, and collect debts due to the bank, is evidently based on the mistaken, supposition of the legislature, that the choses in action, which conferred a right of action on the bank, previously to its dissolution, survived the judgment of forfeiture, and would support an action at law in favor of any person whom the legislature *69 might direct to bring such action. It has already been shown that this is a false assumption, because the choses in action are annulled, and the right of action flowing therefrom, ceases to exist the moment the franchises of the bank cease to exist. In the argument at bar, counsel seem to have confounded a right to sue with a cause of action. The burden of the argument was, that a right to sue was a vested right, and they read many authorities to that point; and so the majority of the court say, that a right to sue, vested in the trustees on the dissolution of the bank, and that such right is a vested right; hence, the statute of 1846, taking away the right to sue, and furnishing no other adequate remedy, was unconstitutional, and to that extent void. But it has nowhere been shown to my conviction, that a cause of action was legally vested in the trustees. It is true, the majority of the court declare, that “ the contracts were preserved in full vigor, and the property did not revert to the original grantor or to the state, and the law required that a trustee or successor should be appointed, and this having been done, he thereby acquired the legal title to the property and choses in action.” This position is not made the subject of argument in the present opinion of the majority of the court, but is based upon their opinion in the case of Neviit v. The Port Gibson Bank, 6 S. & M. 513. My dissenting opinions in that case in addition to the views hereinbefore set forth, are referred to as a reply to this position.
For these reasons, in addition to those heretofore given, I am still of the opinion that the trustees appointed under the statute of 1843, have no such title to the choses in action that were of the dissolved bank, as will enable them to support an action upon the same.
It has been strenuously urged upon me, that inasmuch as the majority of the court have heretofore held the statute of 1843 to be constitutional, that it is now my duty to concur in that opinion, the convictions of my own mind to the contrary, notwithstanding. I cannot yield my assent to this proposition. The judges of this court are sworn to support the constitution of this state,.and to discharge, to the best of their respective abilities, *70 the duties of their office. The constitution is the supreme law of the land. Were I to concur in the opinion of the majority of the court, I should feel that I was doing an act in violation of the constitution of the state. The majority of the court are doubtless as conscientious in entertaining their opinion. But each judge is independent of the others ; and is responsible alone to his own conscience and to his God, for the judgment he may render in any particular case.
In pursuing this cause I am not without a precedent. The constitution of this state prohibits the introduction of slaves as merchandise, or for sale. In the case of Green v. Robinson, 5 How. 80, the majority of this court decided that a contract made in consideration of slaves introduced into the state, in violation of the constitution, might be avoided, by making the defence at law; but if the defence was not made, and a jhdgment on the contract was obtained, such judgment could not be set aside. Chief Justice Sharkey dissented, on the ground that such a contract was not only voidable, but 'absolutely void, and being void no action could be supported on the same, and no judgment at law could make it'valid. At a subsequent term, the same question arose, in the case of Glidewell v. Hite, 5 How. 110, and Chief Justice Sharkey again dissented, and read an able, and to my mind, unanswerable dissenting opinion.
Upon principle and precedent, therefore, I feel bound to dissent in this case.
The following opinion was filed by Mr. Justice Clayton, after the delivery of the foregoing opinions, in accordance with the intimation, given at the conclusion of the opinion of the chief justice.
I concur in the conclusion of the chief justice, in this cause, but desire to give expression to some of the reasons which influence my judgment.
The act of 1843, commonly called the Briscoe bill, with the Guión amendment, has undergone frequent, protracted, and elaborate investigation, in this court. In the first case, that of the Commercial Bank of Rodney v. The State, 4 S. & M. 439, *71 each of the judges delivered a separate opinion. Judge Thacher, in the close of his opinion, after having previously made a summary of the provisions of the law in question, remarks: “ The foregoing review of this case, brings me to the conclusion, that the statute is, in all respects, constitutional and valid, and that the whole proceedings, as given by the statute, in its inception, progress and termination, is properly, and solely cognizable in the courts of law.” 490.
My own opinion was, that the statute was constitutional, except that part which requires the injunction to be returned into the circuit court, and to be retained until the hearing of the quo xoarranto. Ib. 501. The chief justice was of opinion, that it was constitutional, except as to the whole injunction clause, which he thought was entirely inoperative. Ib. 513.
Next came the case of Nevitt v. The Bank of Port Gibson, 6 S. & M. 513. The majority of the court there held, “ that a judgment of forfeiture against a bank, and appointment of trustees, under the act of 1843, is an assignment, by operation of law, of all the property of the bank to the trustees, for the benefit of creditors; and that the assignment relates back to the period of the issuance of the injunction, against the bank, under the act.” 565 - 573.
Judge Thacher, who dissented in that case, says, “ From the best examination I have been able to bestow on the statute of 1843, and the rules of law applicable to it, I am forced to the conclusion, that the rights and credits of the Bank of Port Gibson do not survive the judgment rendered against that bank.” 532. “ On the contrary, the judgment of forfeiture so extinguishes all the franchises, privileges, rights and credits, of the dissolved corporations, that the trustees, contemplated by the statute, can take nothing by their appointment, save the personal property of the corporation dissolved.” lb. 597.
Then came the case of the Planters Bank, which was twice before this court. On the first occasion, the question was, whether the act of 1844, in regard to that bank and the Mississippi Railroad Company, operated a repeal, by implication, of the Briscoe bill of 1843. To understand the full import of this *72 question, it will be proper to state, that the act of 1844 provided, in the first place, for a surrender of charters, upon the part of those banks, and for a mode of winding up their affairs, and appropriating their assets, in the event of such surrender. But, if they refused to surrender their charters, then jjt provided a mode of proceeding, in the superior court of chancery, to vacate the charter, and to wind up the corporation, for the benefit of the creditors, to appoint commissioners to collect all debts belonging to the same, and to apply the proceeds, first, to the payment of the circulation and certificates of deposit of the bank, and then to the extinguishment of the principal and interest of the bonds issued for state stock, in the Planters Bank. Acts of 1844, 138. The court expressed its unanimous opinion, that there was “ no such repugnancy in the two acts, as to make the last, necessarily, a repeal of the former; and that a judgment, under either, might be pleaded in bar of any subsequent proceeding, in the other court.” 6 S. & M. 632. The next instance was, a mere repetition of this opinion, as to this particular point, and was also unanimous. Planters Bank v. The State, 7 S. & M. 178.
One of two things was established by these decisions; either that the act of 1843 was valid and sufficient to carry out all the objects of the legislature, in the passage of that law; or if not, then, that the act of 1844 was likewise invalid and insufficient for its purposes and objects, so that neither act was of any force. To adopt the latter alternative, as true, would be to condemn the act of 1844 unheard, and to pronounce it unworthy of consideration. For myself, I disclaim all such intention, and am free to declare, that the decision, in my understanding of it, established the validity and sufficiency of the act of 1843, “ in all respects, inception, progress, and termination.”
In his message to the legislature, in January, 1846, the governor communicated a letter from the attorney-general, in regard to these acts of 1843 and 1844, and his course, under them, in reference to the Planters Bank. The letter is to be found among the documents accompanying the message. Senate Journal of 1846, 89. This letter, in reply to the inquiry of the *73 executive, “ why it was deemed better to proceed against the Planters Bank, by quo warranto, than by bill in chancery under the act of 1844,” in substance says: “The proceeding by quo warranto, under the statute of 1843, was pending against that bank, at the time the statute of 1844 was passed. The bank contended, that the law of 1844 repealed the law of 1843, as to that bank, and moved the circuit court to dismiss the information on that ground. The court decided that the law of 1844 did not repeal the law of 1843, and that the information must proceed, as that court had first taken jurisdiction of the law. This decision of the circuit court, put it out of my power to file a bill in chancery, against the bank, under the act of 1844. The powers of the circuit court to wind up the affairs of the bank, were as plenary as those of the chancery court; and had the two proceedings been carried on, it would have presented the singular aspect of a court of law and a court of chancery, both contending for the possession of the assets of the bank.” The legislature appears to have acquiesced in this view; it took no special action, in regard to the Planters Bank, but included it, with a single immaterial exception, so far as the matter in hand is concerned, in the general law, passed at that session.
Thus the law stood, when the act' of 1846 was passed. The decisions of this court upon the act of 1813, were before the legislature. It had been announced, in terms that could not be misunderstood, that the proceedings, under the act of 1843, operated an assignment, in law, of all the assets of the bank, to the trustees, for the benefit of creditors. The statute of 1846, stands on the platform of the act of 1843. It recognizes its validity throughout, and is passed as an amendment to it. It was passed after the judicial construction of this court was had. The views of each member of the court were before it. The statute distinctly recognizes the principle, that the rights and credits were not extinguished, but, on the contrary, that they survived the judgment of forfeiture against the banks. It provides a mode for the disposition of-the rights, credits and effects of the banks. After all this, it seems to me, that the act of *74 1843 is no longer a matter of controversy, but that its construction is settled, and at rest. The act of 1846 stands upon the act of 1843, and its fixed construction, as its foundation, and upon that foundation I take my place, side by side, with the legislature.
The act of 1846 thus rests upon that of 1843. It recognizes the validity of the legal assignment to the trustees, and legislates upon the rights vested under it. The third section directs that the trustees shall return an inventory of all the property and evidences of debt, which come to their possession, and the fourth, requires them to sell said property and evidences of debt, to the highest bidder for cash, in a certain specified manner. The question is, whether this part of the act, directing a sale of the evidences of debt, is constitutional and valid. It divests the right to sue and collect, in the ordinary course of law; it directs a sale by the trustees, and then authorizes a redemption from the purchaser. Can this be done 1 It is in reference to banks, whose charters had been previously declared forfeited, under the act of 1843, that the question arises.
Let us illustrate the proposition by an example. Suppose the legislature should pass a law requiring the merchants of this state not to sue upon the debts due to them, but to expose all their bills, notes, and open accounts, to public sale, to the highest bidder. No one would contend for the validity of such a law. In principle, it is the same with this. By the act of 1843, recognized, in this respect, by the act of 1846, the trustees were vested with the legal title to the choses in action, else they could have nothing to sue for, or to sell. By virtue of that legal title, they were clothed with a right of action. This law divests the right of property, or what is the same thing, renders it worthless, by taking away all remedy to enforce it, and thus impairs its obligation. Its direct tendency is, to enable the debtor to buy up his debt, at an enormous discount, in disregard of the rights of the creditor. It closes the gates of the temple of justice, against the positive provisions of the bill of rights. In my view, its enactments, on this head, are against the constitution of the United States, and of this state.
*75 But it is said this clause is valid, because, by the act of 1843, the legislature reserved power to direct the disposition of the assets, by further legislation. The best way to solve this point, is to see what power was really reserved. The act says, “ the court, rendering the judgment of forfeiture, shall appoint one or more trustees, to collect the debts due to the corporation, to sell and dispose of all its property, and the proceeds to apply, in payment of the debts of the corporation, as might be thereafter directed by law.” What was the legislature afterwards to direct? Not the collection of the debts; that was already done; nor the sale of the property, for that likewise had been done. It must have been, then, the mode of applying the proceeds to the payment of the debts. The act of 1846, contains rules for such application, and to this extent the power to legislate had been reserved. Whether the preferences given, by the act, are valid, is a question not now before us. But, by no just rule of interpretation, can it be held, that this power, thus reserved, can extend to defeat the right of the trustees to sue, and collect the debts due to the banks, at the time of their dissolution.
But it is said, that, by the act of 1840, the banks were prohibited from making assignments of their choses in action. That is true; but the act of 1843, under a given state of things, makes an assignment, by law, for them. If the legislature, by one statute, could take away the right of assignment, which the banks previously h^d, surely by another and a subsequent act, the right to assign might be restored, either directly to the banks, or indirectly by operation of law.
For my views of the law of 1843, I merely refer to my opinions, in the case of Nevitt, and have only to say, that my confidence, in the conclusions, is not, in the slightest degree, diminished, by any subsequent discussion or investigation.
The dissenting opinion contains a long.extract from the opinion of the chief justice in this cause, and says that it embodies and adopts the views of the dissenting opinion in Nevitt’s case. I do not so understand the opinion, especially, when the whole of it is taken in connection, and not a selected portion alone. When it asserts the state has nothing to grant, it likewise holds, that, *76 by the operation of law, the assets of the bank pass, upon the judgment of forfeiture, from the bank to the trustee, who, thenceforward, stands in the situation of an assignee. The trustee, being thus clothed, not with the rights of the state, but the rights which pertained to the bank before its dissolution, has power to collect its assets, in the same manner that an administrator has right to collect the effects of his decedent. On the death of a natural person, the law casts all his rights on his legal representative; so, on the dissolution of the corporation, under the act of 1843, all its rights and credits are transferred to the trustee. In each case, the state, by its law, only prescribes a rule to govern the transmission, and to regulate the mode of ultimate distribution. The intention of the legislature is too plain to be mistaken. No one can doubt its meaning, and, in my apprehension, to carry out the intention of a statute, when not contrary to the constitution, and when plainly expressed, is the incumbent duty of the court. The intention is the polar star of interpretation.
But, if this view of the opinion of the chief justice be not correct, and if it contain anything, which adopts the views of the dissenting opinion, in Nevitt’s case, then I cannot concur in such reasoning. I did not formerly, nor do I now concur with that dissenting opinion. I do not regard the conclusion in this cause, to be dependent upon, or affected by the reasoning contained in that portion of the opinion, selected for comment, by the dissenting member of the court. I have not the slightest doubt of the correctness of that conclusion, and it only remains for me to add my cordial concurrence in it.